UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SONDRA KRAUSE,

               Plaintiff,

       v.

GEORGIA-PACIFIC CORPORATION, a for
profit Georgia corporation, and ERIC KING,
JANE DOE KING, and the marital
community comprised thereof,

               Defendants.

Case No.  C05-5809JKA

**ORDER**

THIS MATTER comes before the court on the Defendants' Motion for Summary Judgment (Doc. 20) with regard to all claims filed by plaintiff.  This case has been reassigned to the undersigned magistrate judge for the conduct of all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) on the consent of the parties.

**PROCEDURAL BACKGROUND**

Plaintiff's complaint was filed with the Washington State Superior Court for Thurston County on or about September 15, 2005, alleging six causes of action:

(i)  Age Discrimination;

(ii)  Wrongful Retaliation/Disriminatory Harassment/Wrongful Termination;

(iii)  Negligent Infliction of Emotional Distress

(iv)  Breach of Contract (Promissory Estoppel), Negligent Supervision and Negligent Retention

(v)  Voice Misappropriation and Fraudulent Misrepresentation/False Advertising; and

(vi)  Wage Claim (RCW 49.52).

On December 19, 2005, Defendants filed a Notice of Removal of Civil Action with this court, stating this court was the court of proper jurisdiction due to the fact that the Complaint raised a question of

1

2    federal law (Age Discrimination claim pursuant to 29 USC § 621, *et seq.*) pursuant to 28 USC § 1331, as

3    well as 28 USC § 1441.

4          On March 6, 2007, Defendants filed the instant motion for summary judgment, properly noted it for

5    consideration on March 30, 2007.  Defendants ask for dismissal of Plaintiff's Complaint in its entirety.

6    Defendants argue:

7          Plaintiff, a former Accounting Assistant at Georgia-Pacific's Olympia
       Containerboard Plant, was terminated on October 7, 2004, after more than three years of
8       consistently poor performance evaluations, written corrective actions, strategic time
       management plans, coaching sessions and a final 60-Day Performance Improvement Plan
9       ("PIP").  While Plaintiff admits that she made many mistakes and often failed to complete
       assigned tasks or meet deadlines, she is nevertheless suing Georgia-Pacific for age
10      discrimination, wrongful discharge under every theory thinkable, and other miscellaneous
       claims.

11          Plaintiff's claims are based on her subjective belief that her performance was fine
12      until Eric King, an experienced CPA, was hired as the plant's Controller in 2001.  There is
       no dispute that Mr. King demanded a well-trained, competent accounting staff.  There is
13      also no dispute that Plaintiff's inability to meet Mr. King's expectations incited conflicts
       between the two, as both employees made repeated complaints to Human Resources about
14      the other.  Plaintiff complained that Mr. King's "belittling and demeaning" conduct toward
       her created a "hostile environment," but she never reported that he discriminated against her
15      based on age, gender or any other unlawful basis.  Indeed, Human Resources refereed this
       tumultuous working relationship for over a year, attempting to simultaneously correct
16      Plaintiff's poor performance and Mr. King's abrasive communication style.  Both Plaintiff
       and Mr. King were counseled and disciplined for their respective deficiencies, the Company
17      moved Mr. King's office away from Plaintiff's, and Human Resources was involved in all
       meetings related to Plaintiff's performance improvement plans and disciplinary actions.
18      When Plaintiff was placed on a final 60-Day PIP, she requested that she not be supervised
       or evaluated by Mr. King, and in response to her request, the Human Resources Manager
19      became her direct supervisor and ultimately made the decision to terminate Plaintiff because
       she had not met the expressly defined objectives of her PIP.

20          While Plaintiff was given every opportunity to be successful, she was unable to meet
21      the expectations for her position as Accounting Assistant.  Plaintiff has no evidence that her
       age, gender, or FMLA leave, played any role in her termination, and the fact that Plaintiff's
22      sole comparator was the same age and gender as Plaintiff and also took FMLA leave is fatal
       to Plaintiff's claims.  In short, Plaintiff cannot sustain her claims for discrimination under any
23      theory, and Plaintiff's other claims—like her voice misappropriation claim for leaving a
       recording of her voice on the plant's internal telephone message system—are frivolous and
24      without legal and factual support.

25   Defendant's Motion For Summary Judgment at 1-3.  In response to Defendant's motion, on March 27,

26   2007, the court received eight declarations (Declarations from (Declarations of  Jerrold Everett, Ben

27   Potter, Zenna Dunning, Ron Jennings, Mac Cook, Loras Gassman,  Joanie Unglaub, and Diane Childress

28   (Docs. 26-33).   The next day (March 27, 2007) the court received two more declarations (Declaration of

ORDER
Page - 2

Ron Goodpasture and Alex Rainey) (Docs. 34, 35).  On the noting date, March 30, 2007, the court received two further pleadings from Plaintiff.  Plaintiff filed, "Plaintiff's Response Opposing Motion for Summary Judgment" (Doc. 37) and a declaration from Plaintiff (Doc. 38).

After receiving a surreply from Defendants and after considering the pleadings filed, the court moved the motion's noting date to allow Defendants a fair opportunity to reply to Plaintiff's materials filed in opposition to the motion, and the court awarded costs to Defendants.  On April 5, 2007, the court heard oral argument, and now rules as follows.

## LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  In deciding whether to grant summary judgment, the court must view the record in the light most favorable to the nonmoving party and must indulge all inferences favorable to that party. Fed.R.Civ.P. 56(c) and (e).  When a motion for summary judgment is made and supported as provided in Fed.R.Civ.P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party.  Id.

## DISCUSSION

### A.    *Plaintiff Was Dismissed For Legitimate Nondiscriminatory Reasons*

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual [who is at least 40 years of age] ... because of such individual's age." 29 U.S.C. at §§ 623(a), 631(a). To establish a violation of ADEA under the disparate treatment theory of liability, Plaintiff "must first establish a prima facie case of discrimination. If [she does so], the burden then shifts to [Defendants] to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, [Plaintiff] must demonstrate that [Defendants'] alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). Despite the

burden shifting, the ultimate burden of proof remains always on the former employee to show that the employer intentionally discriminated because of his or her age.  Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420-21 (9th Cir.1990).

Here, there appears to be an issue of  material fact with respect to whether or not Plaintiff can establish a prima facie case.  During oral argument Defendants argued that Plaintiff cannot establish that she was qualified for the accounting job she was terminated from and that she cannot show that she was replaced by a younger person after she was terminated.  In contrast, Plaintiff has presented some evidence that she improved the collections portion of the job and was able to effectively deal with clients in her position.  However, a question remains whether or not the growth or changes in the company required skills she simply did not have to perform her job.  The evidence presented also shows that while Plaintiff was on FMLA leave a temporary employee was brought in to help in the accounting department, who was not significantly younger than Plaintiff.   When Plaintiff was eventually terminated, it also appears that the accounting department was restructured, and a younger person was hired.  The court notes that the person hired was a certified public accountant and that her responsibilities appear to be greater than those assigned to Plaintiff when she worked in the department.  In sum, there are material issues of fact that would need to be resolved at trial to determine if Plaintiff has presented a prima facie case.

However, assuming Plaintiff has established a prima facie case, the court finds Defendants have argued and presented sufficient facts to prove Plaintiff was terminated from her job at Georgia Pacific for legitimate nondiscriminatory reasons.  The following facts, taken from Defendants' brief supporting the motion for summary judgment and edited, are undisputable.

Plaintiff was hired on May 17, 1982, as a receptionist at Georgia-Pacific's Olympia plant.  While in the receptionist position, Plaintiff began performing Accounts Payable ("A/P") in the Accounting Department.  By 2000, Plaintiff had fully transitioned into the Accounting Department as an Accounting Assistant.  From February 2000 until her termination (on October 7, 2004) , Plaintiff's primary duties were A/R collections, calling and resolving late payment issues with customers, recording and tracking A/R actions, invoicing, daily filing and maintaining and balancing daily reports called "Pepsi Reports" and "Purchased Finished Goods" ("PFGs") Spreadsheets.  Plaintiff also performed various other responsibilities such as managing the telephone system (including recording the messages for the plant's internal and external extensions), preparing employee birthday cards on a monthly basis, and helping organize employee events.

In March 2001, Eric King was hired to manage the Olympia Accounting Department.  At some point, Mr. King became concerned with Plaintiff's performance in the

general areas of time management, ability to multi-task, attention to detail and willingness to adapt to new tasks and procedures.  Mr. King sought the advice of Ms. Boe, (Plaintiff's previous supervisor) and pursuant to advice for the human resource depart, in May 2001, Mr. King issued a memorandum identifying some of Plaintiff's errors to illustrate the areas in which she needed to improve. In response to the memorandum, Plaintiff agreed to be more proactive in her job, including seeking clarification of unfamiliar tasks and receiving additional training from Mr. King in A/R, invoicing and the computer accounting program.

In January 2003, Plaintiff received a written "verbal" Employee Performance Improvement Form related to numerous invoicing errors she made during a one-month period from December 16, 2002 to January 16, 2003.  Plaintiff accepted responsibility for her mistakes and agreed to pay closer attention to detail.  However, three months later, on May 28, 2003, Ms. Boe and Mr. King provided Plaintiff with a  "written" Employee Performance Improvement Form when she failed to follow the invoicing procedures for one of the plant's major customers and incorrectly billed 7 out of 37 shipments.

On August 19, 2003, Mr. King and Ms. Boe again met with Plaintiff for her Mid-Year Performance Review to address her performance in failing to stay current with A/R collections and her frequent inability to timely complete her assignments. Ms. Boe and Mr. King created a schedule and action plan that set out specific expectations for Plaintiff to complete her A/R collections, to document her work properly in the accounting computer program and to timely perform miscellaneous job requests.  Mr. King and Ms. Boe both noted that some of Plaintiff's errors on invoices and spreadsheets stemmed from poor math skills. Consequently, Plaintiff was directed to take classes specifically addressing the types of math skills she needed to perform her job, such as the conversion of decimals, fractions and percentages.

On July 23, 2004, Mr. King and Ms. Boe placed Plaintiff on a final Performance Improvement Plan (PIP).  The PIP identified four clear objectives that Plaintiff was required to meet: (1) keeping up-to-date on A/R; (2) problem solving collections issues with customers; (3) keeping up-to-date on daily duties; and (4) paying attention to detail. Plaintiff acknowledged these objectives and understood that if she failed to improve her performance to an acceptable level, her employment would be terminated. At the time, Plaintiff informed Ms. Boe that she would not be successful if she continued to report to Mr. King.  At that point Ms. Boe became Plaintiff's direct supervisor, evaluated Plaintiff's performance and progress, and made all final decisions related to Plaintiff's employment.

On August 24, 2004, Plaintiff met with Ms. Boe and Mr. King for a 30-day review, and Ms. Boe acknowledged that while Plaintiff had shown slight improvement, she had only met one of her four objectives.  Ms. Boe observed that Plaintiff was overwhelmed in her position because of a lack of skills in time management, attention to detail and basic math. Ms. Boe decided Plaintiff would have to be removed from the accounting department, and consulted her boss, Mr. White, and the Regional Human Resources Manager about the possibility of treating Plaintiff's imminent termination as a layoff, which under Georgia-Pacific's policies would entitle her to severance benefits.  Ms. Boe succeeded in her request, and on September 16, 2004, Ms. Boe provided a copy of the Severance Agreement to Plaintiff and discussed its terms. Plaintiff did not accept the agreement.  On October 7, 2004, after the expiration of the 21-day period Plaintiff had to consider the severance package, Georgia-Pacific terminated Plaintiff's employment.

These facts are undisputed, and no genuine issue of material fact has been raised to prevent the court from

concluded that Defendants have presented legitimate non-discriminatory reasons for terminating plaintiff.

At this point in the analysis, any presumption of unlawful discrimination created by a prima facie case "simply drops out of the picture. " St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). To survive summary judgment, Plaintiff must now introduce "specific, substantial evidence of pretext" sufficient to raise a genuine issue of material fact as to whether the reasons Defendants articulated are pretexts for age discrimination. Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983)).

After carefully reviewing the evidence presented by Plaintiff, the undersigned finds Plaintiff cannot show Defendants actions (Plaintiff's termination) were a pretext for age discrimination. To show that Defendants were discriminating against her because of her age, Plaintiff relies heavily on a statement made by Mr. King when he handed Plaintiff a set of math questions one afternoon and said, "Why don't you take it home. Your granddaughter could figure it out." This statement is demeaning because it berates and belittle's Plaintiff's mathematical skills, suggesting that a person still in grade school or junior high school would be able to correctly answer the questions. There is no question that the statement was extremely rude and disrespectful, but it does not establish or support Plaintiff's claim of age discrimination.

Plaintiff's reliance on general statements she heard being made by the General Manager Scott White also do not provide sufficient evidence of age discrimination to raise a material issue of fact. Plaintiff states she heard Mr. Scott make statements such as, "I wasn't even born when you started working here." Plaintiff does not state these statements were directed toward her, but she felt they were inappropriate. Plaintiff also argues the company had a policy of purging older workers and this purge began sometime following a March 2001 meeting Mr.White conducted to address "the older employees." The court reviewed the letter written by Mr. White inviting the most senior employees of the company and it clearly states the company highly values the experience of such individuals. The letter and meeting does not support any sort of claim of age discrimination as a motivation for plaintiff's eventual termination.

Similarly, Plaintiff's reliance on several declarations filed by co-workers, friends and her current employer do not provide any evidence of age discrimination. For instance, Plaintiff argues the declaration of Diane Childress, a former manager who Plaintiff alleges was a victim of age discrimination, shows the company maintained a "hit list" of employees that the company intended to terminate. After reviewing the

declaration, the court finds no support or relation to age discrimination.

To survive summary judgment, the burden is on Plaintiff to "produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for her discharge was false, or (b) that the true reason for his discharge was a discriminatory one.  Looking at the evidence in the light most favorable to Plaintiff, the undersigned finds no reasonable juror could that Defendants intentionally discriminated against her because of her age. Thus, Defendants motion for summary judgment on Plaintiff's disparate treatment claim under the ADEA is GRANTED.

**B.**     ***Plaintiff's Remaining State Law Claims***

The court has deliberately not discussed any of Plaintiff's remaining claims which are based solely on state law.  It is "within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court."  <u>Harrell v. 20th Century Ins. Co.</u>, 934 F.2d 203, 205 (9th Cir.1991).  Further, it is generally preferable for a district court to remand remaining pendent claims to state court.  <u>Id</u>. at 205.

Rather than decide one way or the other on the issue of whether or not this court should retain jurisdiction over Plaintiff's retaliation and wage claims and proceed toward trial on those matters, at this juncture the court directs the parties to each submit a brief discussing whether or not the remaining claims should be remanded to state court.  Accordingly, each party should file and serve their respective brief on or before **Monday, April 23, 2007.**

<u>CONCLUSION</u>

Based on the foregoing, the Clerk is directed enter summary judgment in favor of Defendant on Plaintiff's claim of age discrimination made pursuant to 29 USC § 621, *et seq*.   The Clerk is further directed note the issue of pendent or supplemental jurisdiction over Plaintiff's remaining state law claims on the court's April 24, 2007, docket, at which time the court will issue a further decision on the matter.

DATED this 11th day of April, 2007.

                    */s/ J. Kelley Arnold*
                    J. Kelley Arnold
                    U.S. Magistrate Judge